IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bucks County Water and Sewer    :
Authority    :
    :
    v.    :  No. 796 C.D. 2022
    :
Edward M. Ridge, Leonard P. Ridge  :
    :
Appeal of:  Edward M. Ridge,    :
Leonard P. Ridge, Leonard P. Ridge,  :
Jr., Leonard P. Ridge, as Trustee of  :
the Leonard P. Ridge, Jr., Residuary  :
Trust III, and Top of the Ridge, Inc.  :
d/b/a Top of the Ridge Trailer Park  :  Argued:  November 9, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
    HONORABLE ELLEN CEISLER, Judge
    HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER           FILED:  December 12, 2023

Edward M. Ridge, Leonard P. Ridge, Leonard P. Ridge, Jr., Leonard P. Ridge, as Trustee of the Leonard P. Ridge, Jr.., Residuary Trust III, and Top of the Ridge, Inc. d/b/a Top of the Ridge Trailer Park (collectively, Landowners), appeal from the February 2, 2022 order of the Court of Common Pleas of Bucks County (trial court), which granted a Motion for Judgment For Want of Sufficient Affidavit of Defense (Motion) filed by the Bucks County Water and Sewer Authority (Authority) and entered judgment in the Authority's favor in the amount of $71,459.03 for unpaid sewer services provided to real property located at 1446 Gibson Road, Bensalem, Pennsylvania (Property).  Landowners argue on appeal that the Authority should

have pursued its municipal lien against the mobile homes located on the Property.[1] After careful review, we affirm the trial court.

## I. Background

A municipal lien is a charge, claim or encumbrance that is placed on property to secure the payment of a debt. *N. Coventry Twp. v. Tripodi*, 64 A.3d 1128, 1132 (Pa. Cmwlth. 2013). A municipal lien arises by operation of law when a municipal claim is lawfully assessed or imposed upon property located in the Commonwealth.[2] *Id.* A municipal lien remains until fully paid and satisfied, provided the property owner does not contest the municipal lien or the amount thereof.[3] The municipal authority that filed the lien may also elect to pursue a writ of *scire facias*, which "serves the dual purposes of a writ of summons and a complaint." *Id.* at 1133. A *scire facias* proceeding is an action *in rem* that serves to warn a property owner of the municipal claim's existence and to provide the property owner with the

---

[1] We have consolidated the issues raised by Landowners to the extent they overlap. In addition to the issue set forth above, Landowners argue that the Authority was obligated to mitigate any losses incurred from unpaid sewer charges by terminating a delinquent account's services, and that the Authority's lien failed to comply with the requirements of what is commonly known as the Municipal Claims and Tax Liens Act (MCTLA), Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7455. Landowners have not developed these issues to any degree in their appellate brief. Accordingly, those issues are waived. *Com. v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (where appellate brief fails to discuss a claim with citation to relevant legal authority or fails to develop the issue in any other meaningful fashion capable of review, the claim is waived).

[2] Section 3(a)(1) of the MCTLA, 53 P.S. § 7106(a)(1), relevantly provides that "[a]ll municipal liens . . . which may hereafter be lawfully imposed or assessed on any property in this Commonwealth . . . are hereby declared to be a lien on said property, together with all charges, expenses, and fees incurred in the collection of any delinquent account, including reasonable attorney fees . . . ."

[3] Section 15 of the MCTLA, 53 P.S. § 7183. The municipal lien must be revived every 20 years. Although Section 15 specifies that municipal claim liens shall be filed within three years of the date the "rates are first payable[,]" a single claim may include rates of different kinds, if payable to the same municipal authority. *Id.*

opportunity to file an affidavit of defense.[4] *Id.* In a *scire facias* municipal claim, the property owes the debt, not the property owner. *Borough of Walnutport v. Dennis*, 13 A.3d 541, 549 (Pa. Cmwlth. 2010). An action *in rem* "does not authorize direct personal liability." *Skupien v. Borough of Gallitzin*, 578 A.2d 577 (Pa. Cmwlth. 1990). Individuals are party defendants to the extent they must show cause why their property is not bound by the lien of the municipal claim. *Dennis*, 13 A.3d at 549. Section 20 of the MCTLA provides that a municipal claim is "prima facie evidence of the facts averred therein[.]" 53 P.S. § 7187. Such averments "shall be conclusive evidence of the facts averred therein, except in the particulars in which those averments shall be specifically denied by the affidavit of defense[.]" *Id.*

On August 19, 2011, the Authority filed a municipal lien against the Property for unpaid sewer services totaling $71,459.03. On January 24, 2012, the Authority filed a Writ of Scire Facias Sur Municipal Claim (Writ) naming Landowners and seeking $71,459.03, plus interest. Landowners filed an Affidavit of Defense (Affidavit) on February 10, 2012, denying liability for the municipal lien on the basis that the alleged charges did not relate to services provided to the Property but to occupants of mobile homes located on the Property, that the alleged charges were not properly levied, and that Landowners did not receive notice of the alleged charges. Landowners also denied that the alleged charges were, in fact, unpaid, and they asserted that the Authority's municipal lien failed to meet the requirements of the MCTLA. Additionally, Landowners contended that the Authority was not authorized to file a municipal lien under the MCTLA, that the Authority filed a municipal lien for services that were never rendered or were provided to empty mobile home lots, that the Authority failed to provide Landowners with any bills to

---

[4] Section 14 of the MCTLA, 53 P.S. § 7182.

substantiate the amounts charged, and that the Authority failed to terminate services for delinquent accounts, resulting in the accrual of "unreasonable and excessive debts" to Landowners' detriment. Original Record (O.R.), Item No. 5 at 4. Landowners further claimed they were owed a credit of approximately $15,000 for services billed but not rendered. Landowners attached to the Affidavit sewer and water bills for four mobile home lots located on the Property, as well as a February 1, 2012 report that allegedly detailed the outstanding balances owed for each mobile home lot on the Property.

The Authority denied the allegations in the Affidavit, arguing that Landowners provided no evidence to refute the amount of the municipal lien or to substantiate Landowners' right to a credit of $15,000. The Authority also rejected Landowners' assertion that its municipal lien failed to conform to the requirements of the MCTLA.

On June 22, 2016, the Authority filed its Motion requesting judgment in its favor, based on Landowners' failure to provide a sufficient defense to the municipal lien.[5] The Authority asserted that the Affidavit did not offer any evidence to overcome the averments in the Writ, and that the Affidavit failed to specifically deny "with particularity" the Writ's averments. O.R., Item No. 15 at 6. Instead, the Affidavit primarily presented conclusions of law. Further, while the Affidavit averred that some lots were charged for services despite being vacant or not having a meter, and that some lots were overcharged, Landowners failed to provide any particulars to support those assertions, such as the identity of the affected lots. The Authority noted that, in an *in rem* proceeding, only the Property was liable for the

---

[5] Due to a lack of activity on the case, the trial court issued a Notice of Proposed Termination of Court Case on January 11, 2016. Thereafter, the parties filed statements of their intention to proceed with the matter.

4

services provided and the Authority could not maintain an action against the individual occupants of mobile homes located thereon. Regarding the Authority's alleged obligation to notify Landowners of past due bills, the Authority maintained that Landowners should have requested that it receive sewer bills for each mobile home lot located on the Property.

In their memorandum of law opposing the Motion, Landowners argued that "in or about 2011," the Authority "decided" it no longer wished to bill its sewer services to the individual occupants of mobile homes on the Property. O.R., Item No. 43 at 5. Instead, "concerned with increasing balances," the Authority notified Top of the Ridge (Landlord), the entity that manages the mobile home community on the Property,[6] by letter dated December 28, 2012, that Landlord would receive sewer bills for all mobile home lots on the Property. *Id.* at 5-6. Landlord could then bill the mobile home occupant for sewer charges incurred by his or her lot. Beginning with the January 2013 sewer bills, the Authority began providing Landlord with a "master statement" that indicated the balance owed for each mobile home lot. *Id.* at 6. According to Landowners, the individual mobile home occupants continued to submit their payments directly to the Authority, which initially accepted those payments. "[O]ver time," however, the Authority refused to accept payments from individual occupants. *Id.* at 7. In concluding their memorandum of law, Landowners cited to various statutory authority, including Section 8821 of the Consolidated County Assessment Law, 53 Pa.C.S. § 8821, which authorizes the assessment of real estate taxes on mobile homes, which are taxed separately from the underlying real property. Landowners did not discuss the relevance of the cited provisions.

---

[6] Landlord is a lessee of the Property that consists of approximately 300 mobile home lots. Landowners are shareholders of Landlord. O.R., Item No. 5, ¶ 3.

5

Following oral argument held on January 14, 2022, the trial court entered its February 2, 2022 order granting the Authority's Motion and entering judgment for the Authority in the amount of $71,459.03. Thereafter, Landowners filed a "Concise Statement of [Errors] Raised on Appeal" (Concise Statement), which relevantly argued that the Authority was "illegally attempting to assign or transfer charges owed by the owners and occupants of mobile homes, which are real estate parcels with specific tax map parcel numbers, which were the actual, proper[,] and appropriate beneficiaries of the services provided by them . . . ." O.R., Item No. 53, ¶ 5. The trial court subsequently issued an opinion pursuant to Pa.R.A.P. 1925(a), to address the issues raised in Landowners' Concise Statement.[7]

The trial court noted that Landowners did not admit or deny any portion of the Writ with specificity, as required by Section 20 of the MCTLA, 53 P.S. § 7187. Instead, Landowners challenged whether the Authority was empowered to provide sewer services, whether the Authority improperly included Leonard P. Ridge and Leonard P. Ridge, Jr. as parties to the Writ, as they are both deceased, and whether the Authority's municipal lien conformed to the requirements in the MCTLA. While Landowners indicated that certain mobile home lots on the Property did not have structures, were not metered, were vacant, or were otherwise billed amounts unrelated to the lot's sewer usage, Landowners did not provide support for the averments. The trial court dismissed the February 1, 2012 report Landowners

---

[7] We will not summarize the trial court's opinion to the extent it addresses issues not raised in the instant appeal or issues that have been waived because Landowners failed to properly develop the arguments related thereto.

attached to their Affidavit as it lacked "specific averments as to any particular meter, lot, tenant, bill[,] or circumstance." O.R., Item No. 55, trial ct. op. at 17.[8]

The trial court rejected Landowners' argument that, because mobile homes located on the Property were assigned a tax map parcel number and assessed property taxes, the mobile homes were liable for sewer services provided by the Authority, and that the Authority was obligated to file its municipal lien against the mobile homes. The trial court noted that Landowners provided no legal authority to support their position, beyond citation to the statutory provisions outlined in their memorandum of law. The trial court relied, in part, on *Douglass Village Residents Grp. v. Berks County Board of Assessment Appeals*, 84 A.3d 407, 410 (Pa. Cmwlth. 2014), in which this Court held that real estate taxes imposed on improvements to a mobile home that were permanently attached to the real property upon which the mobile home was located should be assessed against the landowner and not the mobile homeowner. The trial court here reasoned that sewer improvements utilized by a mobile home similarly benefited the Property, not the mobile home located on the Property. The trial court also relied on this Court's decision in *Skupien*, 578 A.2d at 579, in which we held that legislation enacted by the General Assembly, including Section 4 of the MCTLA, 53 P.S. § 7107, empowered municipalities to pursue a landowner for a tenant's delinquent utility bills.

Regarding the alleged illegal assignment or transfer of responsibility for sewer charges, the trial court found that Landowners failed to prove the existence of a contract between the Authority and occupants of the Property's mobile home lots.

___

[8] The February 1, 2012 report lists each mobile home lot on the Property, identifies the individual or entity associated with the lot, the lot's address, and the outstanding balance due for sewer charges. A few handwritten notes on the report indicate if a particular lot is not metered, and whether the lot is vacant, and the length of a lot's vacancy. The trial court found that such notes provided no explanation as to the accuracy, or inaccuracy, of the balance owed.

Changes to the Authority's billing practices, which directed that mobile home occupants pay Landlord for sewer charges, did not shift ultimate liability for unpaid sewer bills to the mobile home occupant. The trial court noted that proceedings on the Authority's Writ were *in rem*. Thus, the issue of an *occupant's* liability for the receipt of sewer services was not before the trial court. Accordingly, the trial court concluded that it properly granted the Authority's Motion and entered judgment against Landowners.

## II. Issue

On appeal,[9] Landowners argue that the Authority should have pursued its municipal lien against the mobile homes located on the Property.

## III. Discussion

Where a municipal authority seeks judgment on the basis that an affidavit of defense is insufficient, the averments in the affidavit of defense are taken as true. *Estate of Rosamilia*, 826 A.2d at 56. The trial court may not go outside the case as presented in the pleadings and consider facts in support of, or contrary to, the defenses set forth in the affidavit. *Id.* at 56-57. The procedure to be followed, therefore, is analogous to a motion for judgment on the pleadings. *Id.* at 57. An appellate court may discharge a judgment for insufficient affidavit of defense if it concludes that the case should go to trial so the facts "may be more fully developed and passed upon." In ruling on the sufficiency of an affidavit of defense, the only

---

[9] Landowners initially filed their appeal with the Superior Court, which transferred the matter to this Court on June 14, 2022. Where the trial court only reviews the pleadings, this Court will review the trial court's order granting the Authority's Motion as we would an order granting a motion for judgment on the pleadings. *W. Clinton Cnty. Auth. v. Estate of Rosamilia*, 826 A.2d 52, 56-57 (Pa. Cmwlth. 2003) (internal citations omitted). Our review of a trial court's decision to grant a motion for judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether unresolved questions of material fact remain outstanding. *Pfister v. City of Phila.*, 963 A.2d 593, 596 n.7 (Pa. Cmwlth. 2009).

8

documents properly before the trial court are the writ of *scire facias*, the affidavit of defense, and the replies thereto. *Gen. Mun. Auth. of Borough of Harvey's Lake v. Yuhas*, 572 A.2d 1291, 1294 n.1 (Pa. Super. 1990). The trial court may not "go outside the record and consider extraneous materials" if facts are omitted from the affidavit of defense. *Id.*

Landowners base their argument that the Authority's lien cannot be sustained against the Property on their characterization of mobile homes as real estate, the definition of which in Section 8811(a)(1)(ii) of the Consolidated County Assessment Law includes mobile homes "permanently attached to land or connected with water, gas, electric[,] or sewage facilities." 53 Pa.C.S. § 8811(a)(1)(ii). Landowners note that the mobile homes on the Property have been assigned tax map parcel numbers and, because the mobile homes are the structures that incurred the sewer charges, and benefited from same, they should be treated in the same manner as condominiums, for purposes of the Authority's municipal lien. Landowners maintain that the Authority "changed the names" on its billing accounts from the individual mobile home occupants to Landlord for the purpose of substantiating its municipal lien on the Property and pursuing the instant *in rem* proceeding.

We note that Landowners did not raise this defense in the Affidavit they filed in opposition to the Authority's Writ. At best, the Affidavit makes general statements that the Authority was not legally empowered to file liens under the MCTLA. Otherwise, the Affidavit avers that the Authority's lien for unpaid sewer services encompasses vacant mobile home lots, which presumably did not require sewer services, and that the lien includes charges for lots without meters and without regard to the actual usage of the lot. At no point did Landowners aver that the mobile homes located on the Property constitute real property that are liable for the unpaid

9

sewer bills. Indeed, paragraph 27 of the Affidavit acknowledges that "a party waives all defenses not presented by way of an Affidavit of Defense[.]" O.R., Item No. 5, ¶ 27. While Landowners "reserve[d] the right to file a more specific Affidavit" upon receipt of the sewer bills underlying the Writ, it does not appear that Landowners filed such a document. *Id.*

Landowners also failed to raise this issue in their Answer to the Authority's Motion. While Landowners cite to various provisions in the Vehicle Code,[10] the Consolidated County Assessment Law[11] and the Manufactured Home Community Rights Act[12] in their brief opposing the Authority's Motion, the relevance of these statutes is not made clear. Eventually, in their Concise Statement filed on April 1, 2022, Landowners state that the Authority is "illegally attempting to assign or transfer charges owed by the owners and occupants of mobile homes, which are real estate parcels with specific tax map parcel numbers, which were the actual, proper[,] and appropriate beneficiaries of the services provided by them . . . ." O.R., Item No. 53, ¶ 5.

In reviewing a Motion for Judgment For Want of Sufficient Affidavit of Defense, the trial court is limited to reviewing the writ of *scire facias*, the affidavit of defense, and the responses thereto. Allegations not included in an affidavit of defense to a *scire facias* municipal lien claim and issues not raised before the trial court cannot be raised for the first time on appeal. *Borough of Fairview v. Prop. Located at Tax Index No. 48-67-4*, 453 A.2d 728, 729 n.2 (Pa. Cmwlth. 1982). Because Landowners failed to argue in their Affidavit that the Authority should have

---

[10] 75 Pa.C.S. §§ 101-9805.

[11] 53 Pa.C.S. §§ 8801-8868.

[12] Act of November 24, 1976, P.L. 1176, *as amended*, 68 P.S. §§ 398.1-398.17.

10

pursued its municipal lien against the mobile homes on the Property, the issue is waived.

Even if Landowners had not waived the issue, there is no merit to their argument. Landowners provide no legal authority for supplanting the definition of property in the MCTLA[13] with the definition of "real estate" in Section 8811(a)(1)(ii) of the Consolidated County Assessment Law. Our jurisprudence holds that a property owner is liable for services benefiting the property, "regardless of their incurrence by tenants." *City of Phila. v. Perfetti*, 119 A.3d 396, 402 (Pa. 2015).

Landowners do not dispute that they are the record owners of the Property and shareholders of Landlord, which manages the mobile home community on the Property. Notwithstanding Landowners' argument that mobile homes should be treated as condominiums for purposes of the Authority's municipal lien, Landowners have not denied that the individuals occupying mobile homes on the Property are Landlord's tenants. Indeed, Landowners have not suggested that the mobile homes themselves are not, to an extent, lessees of Landlord or the Property. As the trial court recognized, Landowners' Affidavit challenged the validity of the Authority's lien but failed to provide any particulars to support their claims. Accordingly, the trial court did not err in granting the Authority's Motion and entering judgment against Landowners in the amount of $71,459.03.

_____
ELLEN CEISLER, Judge

---

[13] Section 1 of the MCTLA defines "property" as "the real estate subject to the lien and against which the claim is filed as a lien." 53 P.S. § 7101.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bucks County Water and Sewer   :
Authority   :
  :
     v.   :   No. 796 C.D. 2022
  :
Edward M. Ridge, Leonard P. Ridge   :
  :
Appeal of:  Edward M. Ridge,   :
Leonard P. Ridge, Leonard P. Ridge,   :
Jr., Leonard P. Ridge, as Trustee of   :
the Leonard P. Ridge, Jr., Residuary   :
Trust III, and Top of the Ridge, Inc.   :
d/b/a Top of the Ridge Trailer Park   :

# **O R D E R**

AND NOW, this 12th day of December, 2023, the February 2, 2022 order of the Court of Common Pleas of Bucks County is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge